## Coleman Estate

*Federico F. Mauck* and *Paul I. Guest*, for accountants.

TAXIS, P. J., June 12, 1957.—. . . A question concerning compensation of the trustees has arisen requiring determination. The corporate trustee asks that its compensation be increased to four percent on income per annum and that an additional four percent on income per annum be divided equally among the four individual fiduciaries.

Paragraph 17th of the will specifically incorporates by reference a letter dated September 25, 1934, which

deals with compensation of the executors and the trustees. In paragraph 17th of his will testator provides in part as follows: ". . . and the compensation payable to the Executors and/or Trustees hereunder shall be as agreed by a letter or letters signed by the respective Executors and Trustees herein named, which compensation shall be payable one-half to the then corporate Executor and/or Trustee and the other one-half thereof in equal shares unto and among the other then Executors and/or Trustees."

The corporate trustee and two of the four individual trustees are signatories to this letter.

Testator died on August 11, 1936. Approximately two years before his death, on September 25, 1934, the Pennsylvania Company for Insurances on Lives and Granting Annuities (now The First Pennsylvania Banking and Trust Company), surviving testamentary trustee, wrote the letter previously mentioned to Mr. Coleman, testator, in which it states that: "Relating to commissions for your estate, on principal, there would be a charge of one per cent. (1%).

"On income: estates $100,000 to $250,000 3%; estates $250,000 to $500,000 2½%; estates over $500,000 2%."

The account presently before the court shows that between 1946 and 1950, a commission of three percent that between 1956 and 1957 a commission of four percent to the corporate fiduciary and one percent divided equally among the then acting individual fiduciaries; that between 1956 and 1957 a commission of four percent on income was charged and divided three percent to the corporate fiduciary and one percent among the then acting individual fiduciaries. Since January 1, 1957, a commission of eight percent on income has been charged and divided four percent to the corporate fiduciary and four percent equally among the individual fiduciaries including the substituted trustee.

The cases pronounce the rule that where, as here, trustees by agreement have settled the question of compensation, they are entitled to the amount so agreed upon and only to that amount. See Hunter, O. C. Commonplace Bk., Commissions, §9, p. 153; 1939-1952 Supp., p. 54.

The court possesses power to award greater compensation than that fixed by the terms of the trust where circumstances arise which were obviously not anticipated when the duties of the trustee were considered and compensation agreed upon and in circumstances where the duties of the trustee have become obviously more burdensome. It seems only fair and equitable that a court exercise its power to permit deviations from the terms of a compensation agreement where, owing to such change in circumstances, strict compliance with the terms of that agreement would obviously defeat or substantially impair the accomplishment of the purposes for which the trust was created. After careful consideration of all the evidence I conclude that the agreement of 1934 provides such a low rate of compensation to the trustees as to tend to defeat the very purpose of the trust to the point where a competent corporate fiduciary might with complete justification be reluctant to proceed with the trustees' duties because not adequately compensated. Cf. Restatement of the Law of Trusts, §242f; Scott on Trusts, §242.4 pages 1937, 1938.

An examination of paragraph 6 of the will of this testator discloses that he intended that the trustees would exercise careful judgment in the selection of the charitable beneficiaries. As a result of this provision the trustees say they have been burdened with extensive work in administering the charitable program, and that the amount of time spent in the benevolent aspects of this charitable program have been as much if not more than some of the duties relating to and concerning administration.

The income of this charitable trust has increased between 200 percent and 300 percent in the last several years for the reason that several annuitants have died, and the trustees have sold the last remaining real estate so that the care and responsibility of operating Camp Diamond have ceased and the costs thereof no longer invade income. Trustees have sold the holdings of a small closely held manufacturing corporation and it is expected that shortly a substantial amount, i.e., $300,000, will be added to the principal from a trust under a deed dated March 22, 1934.

Trustees also state that the charitable program by decedent has invited many requests by charities to participate in gifts of income, and that this has required the trustees to make extensive investigations in order, fairly and conscientiously, to carry out testator's intention, and that this has all been in addition to the normal administration of the trust. I have little doubt in concluding that the trustees in this trust performed their duties well, but I am not convinced from anything that has appeared before me that their duties have been extraordinary for a trust of this type, or that they will in the future be called upon to provide extraordinary services in the sense that would entitle them to extraordinary compensation.

One must concede, however, the inadequacy of the compensation provided by the will. What then is fair and just compensation to these trustees in the circumstances disclosed by this record? They ask eight percent per annum on income. I think that rate is high. I am reluctant to increase their compensation from two percent to eight percent at this time unless, by hearing, and the submission of further testimony, they wish to present in detail the full picture of extraordinary services rendered. In consideration of the rather large number of trustees required by the will, I conclude that six percent is a fair and equitable rate

of compensation on income on the facts and record now before me for the period from January 1, 1957, to be divided four percent to the corporate fiduciary and two percent to the individual trustees. The compensation prior thereto, however, is approved as set forth in the accounting.